GULOTTA, Judge.
This is an appeal by Jefferson Downs (hereinafter referred to as J.D.) from a judgment of the trial court upholding the decision of the Louisiana State Racing Commission (hereinafter referred to as the Commission) granting a permit for 54 racing days rather than a permit for 105 racing days as requested by J.D. We reverse.
J.D. made an application to the Commission for a racing permit to run five days per week for 105 days, commencing April 10, 1974 and ending September 2, 1974. Evangeline Downs (hereinafter referred to as E.D.), located approximately 150 miles from J.D., requested 88 racing days, commencing on April 4, 1974 and ending on September 2, 1974. Their program provided for racing four days per week. At a hearing on August 24, 1973, the Commission granted the E.D. permit for the requested days but rejected J.D.’s request. They granted J.D. only 54 days, commencing April 10 and ending on June 22, 1974.[1]
Plaintiff, in seeking to have the Commission’s ruling amended to allow the additional dates, contends that the Commission was without authority to modify the request by granting a reduced number of days. Plaintiff calls to our attention LSA-R.S. 4:158 which provides :
“ * * * On or before the first of May and the first of September of each year, after receipt of the applications the commission shall convene to consider the refusal or granting of the permits or licenses applied for. * * * ” (emphasis ours)
According to plaintiff’s interpretation of the statute, the Commission can only refuse or grant the request. Plaintiff reasons if the request is refused, it should be permitted to reapply to the Commission for a permit for a lesser amount of days and specific dates to be selected by plaintiff. The statute, contends J.D., does not authorize the Commission to arbitrarily select the amount of days as well as the dates.
The primary thrust of plaintiff’s complaint, however, is that the action of the Commission granting the E.D. permit and the modification of their application is arbitrary, capricious and constitutes an abuse of their discretion under LSA-R.S. 49:964(G) (5).[2] J.D. insists that the practice of the Commission considering applications for racing dates in alphabetical order place's J.D. at a disadvantage, since the E. D. request had already been approved before its request was taken up by the Commission. Plaintiff complains that it was the approval of the E.D. dates which constituted the basis for J.D.’s denial since the requested dates were overlapping and in conflict. Plaintiff finds fault with the Commission’s failure to consider both applications at the same time since the Commission had prior knowledge of the requests for conflicting dates. They insist that if it were determined that simultaneous conflicting dates were deleterious to *655 racing and the state, the Commission could reach a decision on both applications while considering the merits of each at the same time. To refuse J.D.’s application on the grounds that dates had been awarded to E.D. and that the demands for horses could not be adequately met if competitive overlapping permits were granted is arbitrary, according to plaintiff. Plaintiff complains that an unfair burden is placed on it and not on E.D.
It is the Commission’s position that LSA-R.S. 4:147(1) places the responsibility upon the Commission to set the dates during which any race meeting, may be conducted; and that upon the refusal to grant the 105 days requested, they have the authority to grant a permit for a lesser amount of days, provided it is within the time period requested by Jefferson Downs.
The Commission also contends that an administrative agency, such as the Racing Commission, has the right to rely upon the expertise [3] of the Commission members and that the very nature of their appointment presupposes that the Commission members are knowledgeable and will make decisions in the best interests of racing and in the best interests of the State of Louisiana. The Commission argues that plaintiff has the burden of persuading them that a conflict of racing dates would have no deleterious effect upon racing in Louisiana.

The Commission’s Authority to Modify The Request

We find no merit in plaintiff’s contention that the Commission is without authority to modify the request for racing dates. The language of LSA-R.S. 4:147 is clear. The statute provides:
“The Commission shall carry out the provisions of this Part, including the following specific duties:
“(1) To set the dates during which any race meeting may be conducted in any parish of this state and to prohibit the conduct of any race meeting having' the same or overlapping dates for such race meetings at race tracks within a radius of one hundred miles of each other. * * * ”
While LSA-R.S. 4:158 provides that the Commission shall convene “to consider the refusal or granting of the permits or licenses applied for”, we cannot say that this language is so restrictive as not to allow the Commission to grant a lesser amount of dates than is requested or to set the dates in the permit if it is within the time period requested by the applicant. A reading of LSA-R.S. 4:147 and LSA-R.S. 4:158 in pari materia clearly grants that authority to the Commission.

Arbitrary, Capricious or Abuse of Discretion

We next consider whether the procedure followed by the Commission at the August 24, 1973 hearing, in which it considered the request, is arbitrary, capricious or an abuse of discretion. Admittedly, the Commission takes up applications in alphabetical order and considers each application and disposes of it before consid *656 ering the next. At the outset, we find the alphabetical method employed by the Commission to be abrasive to any concept of objectivity. Under this procedure, the applicants who are heard first through alphabetical selection are placed in a more advantageous position for requesting and obtaining dates than those who are heard later. This method cannot possibly withstand the test of reason and cannot be condoned. A reasonable approach required the Commission, when aware in advance that conflicting dates were requested, to afford both applicants an equal opportunity to present the merits of their request and to have a determination on both made after the requests were considered. This was not done in the instant case. It is apparent that defendant employed a laxed and unexacting procedure devoid of staff reports and studies or sworn testimony, and no opportunity was afforded to interested parties for confrontation and cross examination. This practice is not at all consistent with the letter or the spirit of the administrative procedure act. We mean no criticism of the individual members of the defendant Racing Commission since for many years it had the responsibility of administering only one race track in the State and since competition among various race tracks has only recently become a problem, but with the prospect of more tracks applying for licenses in the future it will become more and more important for the defendant to comply assiduously with the provisions of the administrative procedure act, including not only the evidentiary requirements but also those relating to notice.[4]
It might be arguable that J.D. acquiesced in this procedure when it did not oppose E.D.’s request at the time it was considered. Assuming ’this argument is meritorious, nevertheless, J.D., when its request was heard, was entitled to have the hearing on its application considered in accordance with the provisions of LSA-R.S. 49:955 and LSA-R.S. 49:956 governing administrative hearings. These statutes provide for an evidentiary hearing with propr er notice and for consideration by the Commission on issue of fact based on competent probative evidence with full opportunity for examination and cross examination. In the instant case, the Chairman of the Commission stated in connection with J.D.’s application:
“WeTl go to the next item of business.
“I have before me a letter from Jefferson Downs. Jefferson Downs, Incorporated has applied for eight — Let’s see now. Whose agent is Marie Krantz to make application for a license to conduct flat thoroughbred horse racing for the following days beginning on Wednesday, April the 10th and continuing thereafter five days or nights per week and closing on Monday, September the 2nd for a total of a hundred and four days.
>jí >ji iji
“Now, what we’re involved with here, we’re involved with two race tracks pulling from the — comparably speaking, the same caliber and the same class of horses running against one another for the entire summer. The identical racing dates with the exception of Jefferson Downs is applying for five days and Evangeline Downs is applying for four; and Jefferson Downs beginning six days later. If the aforementioned business becomes a reality from June the 2nd to September the 2nd, it’ll be eighty-five thoroughbred races per week in a five day period from the same caliber horses. I would like to think that — that Louisiana would be strong enough thoroughbred-wise to support this type of program. I presently don’t think that the card will fill. * * * ”
*657 It is apparent that the Chairman and the Commission members, in reaching a conclusion adverse to J.D., relied on their expertise and knowledge.
 It is true, as pointed out, that the Commission under LSA-R.S. 49:956(3) may take notice of judicially cognizable facts and “of generally recognized technical or scientific facts within the agency’s specialized knowledge.” However, in the instant case, the record of the hearing does not indicate that any staff report, or any evidence or technical, expertise information was supplied to the Commission upon which the Chairman or the Commission members based their predisposed observations. Lacking any evidentiary foundation in the record, we are compelled to conclude that a determination based on unsupported statements is arbitrary. Under the circumstances, we cannot uphold the decision of the Commission.
Nor do we find support from the record for J.D.’s request to be granted a permit for 105 racing days as submitted to the Commission. In an effort to contradict the expressed opinions, plaintiff offered unsubstantiated argument and exhibits to the effect that more than a sufficient amount of horses are available to meet the requests of both tracks operating simultaneously; that additional revenue would be derived by the state and racing with the additional racing days, and that E.D. did not suffer a loss of income, in the past, when both tracks operated on concurrent dates. It is significant that no affidavits, witnesses or any competent evidence was offered supporting these claims. Were we to grant the request of J.D. for the additional days, we would be substituting our judgment for that of the Commission without any evidence to support such a conclusion. This, we cannot do.
The lack of evidence in the record of the hearing compels a remand to the Commission for an expeditious reconsideration of the request of J.D. for racing dates in 1974.
Accordingly, the judgment appealed from is reversed and set aside. The order of the Louisiana State Racing Commission granting J.D. a permit for 54 racing days commencing April 10, 1974 and ending June 22, 1974 is annulled, rescinded and set aside. The matter is remanded to the Louisiana State Racing Commission for an expeditious hearing and adjudication of J.D.’s application for a 1974 racing permit in accordance with the provisions of the administrative procedure act, LSA-R.S. 49:951 et seq.
Reversed and remanded.
MORIAL, J., concurs with written reasons.

. The transcript reflects April 4, 1974 to June 15, 1974.

. LSA-R.S. 49:964(G)(5) reads in part as follows: <i * $ * * *
The Court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
8{5 * ❖
“(5) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; * * * ”

. LSA-R.S. 49:956 reads in part as follows: “In adjudication proceedings:
* * * * S¡5
“ (2) All evidence, including records and documents in the possession of the agency of which it desires to avail itself, shall be offered and made a part of the record, and all such documentary evidence may be received in the form of copies or excerpts, or by incorporation by reference. In case of incorporation by reference, the materials so incorporated shall be available for examination by the parties before being received in evidence.
“(3) Notice may be taken of judicially cognizable facts. In addition, notice may be taken of generally recognized technical or scientific facts within the agency’s specialized knowledge. Parties shall be notified either before or during the hearing, or by reference in preliminary reports or otherwise, of the material notice, including any staff memo-randa or data, and they shall be afforded an opportunity to contest the material so noticed. The agency’s experience, technical competence, and specialized knowledge may be utilized in the evaluation of the evidence. * * * ” (emphasis ours)

. LSA-R.S. 49:956 reads in part:
“ * * * Parties shall be notified either before or during the hearing, or by reference in preliminary reports or otherwise, of the material notice, including any staff memoranda or data, and they shall be afforded an opportunity to contest the material so noticed. * * * ” (emphasis ours)