359 So.2d 1061 (1978)
Lloyd ROMERO et al.
v.
Clyde STEPHENS et al.
No. 6467.
Court of Appeal of Louisiana, Third Circuit.
May 24, 1978.
Writ Refused July 3, 1978.
*1062 Thomas A. Rayer, New Orleans, Landry, Poteet & Landry, Sidney P. Landry, Lafayette, John Jackson, Jr., Asst. Atty. Gen., New Orleans, Camp, Carmouche, Palmer, Carwile & Barsh, James E. Williams, Lake Charles, for defendants-appellants.
J. Minos Simon, Lafayette, for plaintiffs-appellees.
Before WATSON, GUIDRY and CUTRER, JJ.
WATSON, Judge.
This is an appeal from the trial court's decision as to the result of a horse race. The proceedings were instituted by plaintiffs, Lloyd Romero, the trainer,[1] and Glenn Cudd, the owner, of a quarterhorse, "Jet on Sam", which finished second in a race conducted at Delta Downs, Incorporated, a track located in Calcasieu Parish, Louisiana. Plaintiffs were denied the second place purse because the urine of Jet on Sam was found to contain a prohibited substance. The defendants are Clyde Stephens, C. L. "Bubba" Webb, and Ernest Hessler, the stewards of the Louisiana Racing Commission at Delta Downs; the Louisiana Racing Commission; and Shilstone Testing Laboratories, Inc., the official chemist for the racing commission.
It was stipulated between the parties that, on June 19, 1976, in the ninth race at Delta Downs, a quarterhorse race, the physical order of finish was: first, Miss Fancy Mires; second, Jet on Sam; and third, Hilo Pearl. In track parlance, these were the "win, place and show horses". It was also stipulated that, following the ninth race, Jet on Sam was taken to the testing barn at Delta Downs; a specimen of his urire was obtained; a portion of the urine sample was sent to Shilstone where it was tested and a test result was issued. It was stipulated that the second place purse was $5,304.
*1063 Stephens, one of the stewards, testified that he received two reports from Shilstone, the state chemist. One of these reports (Shilstone 7TR. 155) indicated that all 14 samples in the test group were negative except for urine sample number 2761, which was being subjected to further investigation. The next report (TR. 156) indicates that sample number 2761 was "positive for Apomorphine or an analog thereof." A notation on one of the reports indicates that 2761 was the sample from Jet on Sam.
Romero testified that Stephens notified him by telephone that Jet on Sam's urine had been found by the racing chemists to contain a forbidden substance and that Romero could have a hearing before one of the stewards, Webb, in Lafayette. Although the trial court did not allow much testimony as to the actions of the stewards, Romero testified that he had a hearing in Lafayette and that the stewards, Webb, Stephens and Hessler, were present. Although the record is not precise as to what occurred at this hearing, it is clear that no appeal was made by Romero to the Louisiana State Racing Commission as provided by LSA-R.S. 4:156[2] and Rule I[3] of the Rules of Racing, Louisiana State Racing Commission, 1971 (Stephens Exhibit 3).
Plaintiffs then filed suit in the 15th Judicial District. The original petition sought a temporary restraining order, preliminary and permanent injunctions and a mandatory injunction designed to obtain samples of urine of the horses finishing first, second and third in the contested race. Following a series of orders and counter-orders in the Fifteenth Judicial District Court, plaintiffs filed an amending petition which demanded money judgments.
As the result of orders by the trial court, plaintiffs obtained from Shilstone a sample of Jet on Sam's urine, but samples were not available from the horses finishing first and third.
The defendants filed various pleadings in response to plaintiffs' demands. The principal pleading of significance to this appeal is the "return to rule to show cause and answer" filed by the attorney general on behalf of all defendants on September 27, 1976. This pleading asserts, among other things, that plaintiffs did not exhaust their administrative remedies. (TR. 64-66).
Additional exceptions were later filed by the Louisiana Racing Commission including: (1) exception of no right of action; (2) exception of no cause of action; (3) exception of non joinder of indispensable parties; and (4) exception to jurisdiction.
At the time set for hearing the merits of the case, the trial court entered its rulings on various motions and exceptions which had been filed. The trial court overruled the exception to jurisdiction, deeming it an exception to venue which had been waived by a general appearance. The exception of no right of action[4] was overruled by the trial court on the ground that it would be ". . . fruitless for the plaintiff herein *1064 to seek to follow any further administrative procedures as provided for in the Louisiana Revised Statutes . . ." (TR. 225). The exception of no cause of action was overruled; the trial court stated that conversion of a summary proceeding into an ordinary proceeding was permissible because of the amendment to the pleadings by plaintiffs. The exception of non joinder was overruled.
The matter proceeded to trial and evidence was taken on the sole issue of whether the horse Jet on Sam had a prohibited substance in his urine sample following the race.
The interesting transcript, which is lengthy and complex in its scientific detail, contains testimony from two experts on behalf of plaintiffs and several experts on behalf of defendants.
The sample of urine, which was judicially obtained by plaintiffs, was submitted first to Dr. Joseph T. Brierre, Jr., a pathologist of Lafayette, Louisiana, whose test with the "thin layer chromatography" method showed a spot which indicated a presumptive diagnosis of Apomorphine, the substance found by Shilstone. However, subsequent tests by Dr. Brierre did not confirm the presence of Apomorphine and he concluded that it was not present in the urine.
Dr. Brierre sent a portion of the sample to Dr. George Morrell of the Center for Laboratory Medicine, located in New Jersey. Dr. Morrell is a PhD. in toxicology. In his thin layer chromatography test, Dr. Morrell also noted a spot which required the notation of possible detection of Apomorphine but he conducted several other tests which did not verify this finding and he concluded that the sample was negative for presence of opiates.
The experts testifying for the defendants included three laboratory technicians from Shilstone: David Marshall, Durwood Neveu, and Pamela Noll. They testified as to the procedures followed at the laboratory in testing equine urine and particularly that of Jet on Sam. The Shilstone people performed first a thin layer chromatography test which in their interpretation indicated the presence of some foreign substance in the horse's urine. Next they performed a gas liquid chromatography analysis which verified that the suspicious substance was Apomorphine.
Additionally testifying for defendants was Dr. Robert Schoenfeld, a biochemist and toxicologist who is the past president of the Association of Official Racing Chemists of the United States and who is also the official racing chemist of the State of New Mexico. Dr. Schoenfeld testified as to the validity of the testing methods used by Shilstone.
Dr. Donald P. Dicharry, who is veterinarian for the Louisiana State Racing Commission, testified that Apomorphine in low doses would stimulate a race horse and a large dose would kill. (TR. 456).
On the basis of the testimony summarized above, the trial court concluded that the testimony by plaintiffs' experts was more persuasive than that of defendants' experts. The trial court thus decided that the urine of Jet on Sam did not contain Apomorphine and entered judgment for the plaintiffs. The judgment signed was in favor of Lloyd Romero and Glenn Cudd and against the previously named defendants, enjoining and ordering them to deliver to plaintiffs the purse for the second place winner of the race at Delta Downs in the amount of $5,304, together with legal interest from judicial demand until paid. It is from this judgment that defendants appeal, asserting all of the various defenses which had been urged in the trial court but primarily contending that the trial court was manifestly in error in deciding that the evidence did not establish that Jet on Sam's urine contained Apomorphine. This court will not express its views as to the merits of the controversy or manifest error by the trial court, because the resolutory issue is the failure of plaintiffs to exhaust their administrative remedies.
Horse racing is a sport which is the subject of extensive and detailed legislation. LSA-R.S. 4:141 181 are the statutes establishing the Louisiana Racing Commission *1065 and expressing, among other objectives, a legislative intent and policy to "encourage forceful and honest state-wide control of horse racing" (LSA-R.S. 4:141). LSA-R.S. 4:148 empowers the commission to make rules and regulations on a broad spectrum of topics, covering all aspects of horse racing.
The stewards are the supervisors of ". . . the daily conduct of racing." LSA-R.S. 4:172. They are the agents of the commission and are under its jurisdiction. LSA-R.S. 4:148. The stewards make the day-to-day decisions which are necessary for the conduct of horse racing. However, the Revised Statutes and the Rules of Racing provide specifically that an appeal "may be taken" (LSA-R.S. 4:156) to the commission.
While the Revised Statutes and the Rules of Racing use the permissive word "may" when referring to an appeal to the commission, the tenor and thrust of the statutes is that racing shall be under the control of the Louisiana State Racing Commission. We read the word "may" in the Revised Statutes and the Rules of Racing to mean that a person must appeal or accept the finality of the stewards' decision. Permissive language must sometimes be given a mandatory interpretation where necessary to carry out the clear policy and intent of the Legislature. Rathborne Lumber & Supply Co. v. Falgout, 218 La. 629, 50 So.2d 295 (1950). Until a formal ruling is obtained from the commission, the plaintiffs have failed to exhaust their administrative remedies and their complaint has no standing in court. Compare Bonomo v. Louisiana Downs, Inc., 337 So.2d 553 (La.App. 2 Cir. 1976). Also see Jefferson Downs, Inc. v. Louisiana State Rac. Com'n, 288 So.2d 653 (La.App. 4 Cir. 1974).
Essentially plaintiffs contend that the stewards were wrong in disqualifying Jet on Sam. This was a decision of the stewards on the basis of the state chemist's report. The plaintiffs must appeal the stewards' ruling to the commission before seeking judicial review.
LSA-R.S. 4:154 provides that the administrative procedures of the Louisiana Racing Commission are as set forth in LSA-R.S. 49:951 et seq., the general administrative procedures act for agencies of the State of Louisiana.
The provisions of LSA-R.S. 49:964 G.[5] list in detail the standards for a judicial review of an administrative decision by an agency such as the Louisiana State Racing Commission. These are different from the burden of proof in an ordinary case in trial court; to allow plaintiffs to omit the appeal to the commission would be to allow them to choose a more favorable burden of proof. This statute sets forth detailed standards as to extent of the review and obviously contemplates that before a matter is presented to a court, it will have been heard by the agency and certain findings will have been made.
The conduct of horse racing in the State of Louisiana has been entrusted by the Legislature to the Louisiana Racing Commission rather than the courts, although judicial review is available after a hearing and ruling by the commission.
*1066 The trial court erred in failing to sustain the exception of no cause of action filed on behalf of the defendants in this proceeding. The exception of no cause of action is sustained and plaintiffs' petition is dismissed. Costs at trial and on appeal are taxed against plaintiffs.
REVERSED AND RENDERED.
NOTES
[1] Romero was duly licensed by the Louisiana Racing Commission as an "owner-trainer". His application is in the record (TR. 148) and is significant as reflecting the care with which the commission licenses persons connected with racing and the control the commission exercises over the sport. Among other features, Romero pledged in the application to abide by the commission's Rules of Racing.
[2] LSA-R.S. 4:156:

"§ 156. Appeal to the commission and review of commission rulings
A. A final appeal, in the case of any person penalized, or disciplined by the stewards, may be taken to the commission.
B. Such an appeal must be filed in writing at the office of the commission within five days of the date of said penalty or imposition of said discipline.
C. Such an appeal must be signed by the person making it and must set forth his reason therefor.
D. An appeal from the decision of the stewards to the commission shall not affect such decision until the appeal has been acted upon by the commission.
E. The commission must grant a hearing within ten days of the receipt of this appeal, and must render a decision within forty-eight hours following the conclusion of the appeal hearing. Any continuance of a hearing must be reasonable in duration and for just cause."
[3] Rule I, Rules of Racing:

"1. APPEAL TO THE COMMISSION
(a) Any person penalized or disciplined by the Stewards may apply to the Commission for a suspensive appeal staying the effect of the Stewards' action pending disposition of such appeal by the Commission
See Appendix, Revised Statutes 4, Section 156."
[4] The exception of no cause (instead of no right) of action is the pleading which properly raises the question of whether plaintiffs may proceed to seek judicial relief.
[5] LSA-R.S. 49:964 G:

* * * * * *
"G. The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
(1) In violation of constitutional or statutory provisions;
(2) In excess of the statutory authority of the agency;
(3) Made upon unlawful procedure;
(4) Affected by other error of law;
(5) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or
(6) Manifestly erroneous in view of the reliable, probative, and substantial evidence on the whole record. In the application of the rule, where the agency has the opportunity to judge of the credibility of witnesses by firsthand observation of demeanor on the witness stand and the reviewing court does not, due regard shall be given to the agency's determination of credibility issues."