CIACCIO, Judge.
Defendants appeal from the district court judgment reversing a decision of the Louisiana State Racing Commission disqualifying the winning horse and redistributing the purse monies for the ninth race, “The Polly Classic” held at Delta Downs on January 28, 1979. We reverse the judgment and amend.
On February 24, 1979 the Stewards of Delta Downs issued ruling No. 199, concerning the racehorse, “Mister Bird Bars” which horse is owned by Dr. Michael Brody and trained by Mr. Matt Baker.[1] After receiving the laboratory test results which proved positive for Furosemide (hereafter referred to as “Lasix”) in the horse’s urine, the Stewards concluded that Rules of Racing, Rules 11-6:53.14 and 11-6:54 had been violated. Accordingly, the Stewards disqualified this horse as the winner of the ninth race, “The Polly Classic” held at Delta Downs on January 28, 1979. The purse monies were redistributed and the horse’s trainer was suspended for thirty days from February 26th through March 27, 1979.
On June 6, 1979 the Louisiana State Racing Commission conducted a hearing concerning Ruling No. 199. The following evidence was elicited at the hearing:
Eugene Hays, a biochemist with Shil-stone Laboratories, testified that he tested urine sample # D2462 from “Mr. Bird Bars” and it proved positive for Lasix. The findings were confirmed by gas chro-mography and gas spectrography. Mr. Hays did not know the clearance time of *895 Lasix from the urine, however he had read materials which indicated that although the clearance time was unknown, the drug could be detected from four to six days after it was administered. In conjunction with Hays’ testimony the plaintiff introduced medical periodicals which indicated that Lasix’s clearance time was unknown but traces of the drug could linger for days after being administered.
Dr. Brody, the horse’s owner, testified that he had owned the horse since 1974. He indicated that in 1978 the horse had become very sick with cellulitis, after receiving some caustic medicine. The horse developed a thrombosis of the juglar vein and lost a considerable amount of weight. Due to this condition, the horse was given steroids and large doses of antibiotics. The drugs and illness damaged the horse’s kidneys. As a result, the animal was unable to excrete fluids normally. Thus, it became necessary to administer Lasix, as prescribed by the veterinarian so as to relieve the fluid buildup.
Dr. Brody stated that he had instructed his trainer to give the horse Lasix on Wednesday, which was the day before the horse’s entry for The Polly Classic. The drug Lasix was given pursuant to a prescription by the horse’s veterinarian, Dr. Ritchey. The drug was given in pill form to this horse, which was not a bleeder. The veterinarian signed an affidavit attesting to the horse’s condition and to the fact that the drug Lasix had been prescribed to alleviate the problem.
Dr. Brody also testified that this was a stakes race with time trials and his horse ran in the finals. He said there was nothing unusual about the horse’s performance on the date of this race. The horse runs Triple A time in at least half of his runs and he didn’t run any faster than normal in this race. The witness also testified that he was familiar with the rules of racing and it was his understanding that the drug Lasix was prohibited once the horse was entered in a race, unless the horse was on program. He concluded by saying that he admitted giving Lasix but he thought it had been given legally.
Matt Baker, the horse’s trainer testified that he- had been given the medicine Lasix by the horse’s owner, Dr. Brody, and he was instructed to administer it whenever the horse “blocks up.” He placed Lasix in the horse’s feed on Wednesday night and he entered the horse for The Polly Classic on the next day. He testified, as did the owner, that the horse was guarded at all times before the race.
The Commission concluded the plaintiff had violated Rules of Racing, Rules 11-6:53, 11-6:53.14 and 11-6:54. Accordingly, they upheld the Stewards’ ruling and additionally suspended the owner for 30 days, beginning February 26, 1979, and denied him all race track privileges for that period of time.
The plaintiff filed a petition for review and a request for a stay order with the district court. The stay order was granted and, on the basis of the record, which was supplemented with trial memorandums, the district court reversed the decision of the Louisiana State Racing Commission and reinstated the horse, “Mister Bird Bars”, as the winner of the subject race and restored the purse monies from the race to the plaintiff horse owner. In reaching this conclusion, the court reasoned as follows:
This Court believes that the burden is on the Racing Commission to establish at least a prima facie case that the urine of the horse contains a prohibited substance. In our view such substances may be expressly prohibited or they may fall into a classification of substances (drugs) which affect the outcome of a race. In the instant case, Lasix is not an expressly prohibited drug, under the Commission Rules. While it is a drug which cannot be administered subsequent to an “entry”, the Rules declare it to be legal — If given to a horse that is a “bleeder” or to a horse in advance of entry. For purposes of this Judgment, this Court has concluded that the Lasix was administered prior to “entry”. It is this Court’s belief, based on the pertinent *896 evidence, including the expert opinions (Exhibits Brody No. 1) describing the pharmacokinetics of Furosemide (Lasix), that without having a quantitative analysis of the test sample of urine, the Commission could not determine whether the suspected drug would affect the outcome of the race.' It is obvious to this Court that the Commissioner’s Counsel recognized that a “split-sample” should have been run. Without it, the Commission was without any basis for “upholding Steward’s Ruling 199 . and ordering the purse money redistributed”. If a split was available, the Court could have directed that a quantitative analysis be done. It is the Commission’s responsibility, in this Court’s view, to at least demonstrate in those non-specified drugs, (and under Commission Rules) that the drug did affect the outcome of the race. (Reasons for Judgment, pp. 2-3).
The sole issue on appeal is whether the district court erred in reversing the Commission’s ruling, after concluding that the State failed to prove that Lasix was administered subsequent to the entry and that the drug would [i.e., “could”] affect the outcome of the race.
With regard to the plaintiff’s violation of LAC 11-6:54.1, appellant contends that administration of bleeder medication on horses which are racing is prohibited, unless the horse is on the bleeder medication program. In this case it was established that the subject horse was not a bleeder nor on the bleeder's list, thus Lasix, a bleeder medication, was a prohibited drug within the meaning of the Rules of Racing. We agree.
LAC 11-6:54.1 provides:
LAC 11-6:54.1 The use of phenylbuta-zone (Butazolidin), Arquel, and/or Lasix is permitted upon a race horse within a licensed racing enclosure or an auxiliary (off-track) stable area, subject to compliance with the following:
A.Only a veterinarian may prescribe, dispense, and administer phenylbutazone, Arquel and/or Lasix, except a trainer may administer phenylbutazone or Arqu-el if it is an ingestible or is topically applied.
B. Lasix may be administered the day of the race upon approval of the State Veterinarian. Lasix will not be administrated to any horse racing in the state of Louisiana, except under the following conditions:
1. The subject horse must be known to bleed by either the Louisiana State Veterinarian or one of the association veterinarians, and will be considered a known bleeder.
2. When the subject horse is observed bleeding, it will not be accepted in the entries for a period of 14 days, and then, only with the written consent of the Louisiana State Veterinarian. A known bleeder must remain on the lasix list for a minimum of 90 days.
3. The Louisiana State Veterinarian at each track will keep an up to date list of horses placed on the lasix or bleeders list and shall notify the other tracks that are racing in Louisiana.
4. Horses shipping in from other states, that intend to race in Louisiana, in order to qualify under this rule as known bleeders, must have filed in its behalf a statement to this effect from either the state veterinarian or a licensed racing association veterinarian of that respective state. This statement must be filed with the Louisiana State Racing Commission Veterinarian at the appropriate Louisiana track.
C. Daily reports of the administration of Lasix must be given to the State Veterinarian by 12:00 noon. They must be signed by the attending veterinarian and cosigned by the State Veterinarian, and must contain the following:
(1) Date of the race.
(2) Number of the race in which the horse is to run.
(3) Name of the horse and its tattoo identification number.
(4) Name of permissive medication or medications administered.
*897 (5) Hour and date that all permitted medication was administered to the horse.
D. Prior to or at the time of its entry in a race at each race meeting, a trainer shall report to the State Yeterinarian each horse under his care by name, including the tattoo identification number, which shall run on phenylbutazone or Arquel. Once a horse is reported to be on a phenylbutazone or Arquel program, it shall be deemed to be continued on the program unless removed in accordance with the provisions of Section 54. IF.
E. Whenever bleeder medication, Arqu-el, or phenylbutazone is to be administered to a horse entered for racing, that information will be posted for public information in the Daily Racing Form, and the Daily Racing Program. (Emphasis supplied)
Jfc * * ⅜5 ⅜ *
The clear language of this Rule indicates that “Lasix will not be administered to any horse racing in the State of Louisiana except ... “under the precise reporting and regulatory conditions of LAC 11-6:54.1.
There is no dispute that Lasix was administered. The biochemist attested to its presence in the urine of this racehorse. The owner and trainer admitted that Lasix was used. Additionally, there was no proof that the administration of this drug to the subject horse was reported as required by the regulations, even though the drug had been prescribed by a veterinarian as required by the rules. Clearly these facts present a violation of the Rules of Racing, Rule 11-6:54.1 and the Commission correctly so concluded. Additionally, insofar as this rule provides for the sanctions of “fine, and/or suspension, and/or revocation of license” for a violation of this provision, the Commission correctly suspended the owner and denied him race track privileges for thirty days.
Insofar as the judgment of the district court failed to address this issue, it is amended to affirm the owner’s suspension for a period of thirty days and to deny him all race track privileges during the time of suspension.
Appellant argues that the trial court erred in restoring the purse monies to the owner of this race horse. Appellant reasons that, as to “Mister Bird Bars,” Lasix was a prohibited drug, as this horse was not a bleeder. Appellant further reasons that this horse was ineligible to enter the race after Lasix was illegally administered, and, since the horse was ineligible to race, it should not be awarded the purse. We agree.
The record shows that this horse was not a bleeder, nor on the bleeder list, yet, it raced in this race on the bleeder medication, Lasix. LAC 11-6:54. Since the horse had been administered a prohibited medication, within the Rules of Racing, it was ineligible to race in this classic. See: Stall v. Louisiana State Racing Commission, 442 So.2d 789 (La.App. 4th Cir.,1983), writ den. 445 So.2d 449. A horse must be eligible to run at the time of starting. LAC 11-6:25.18 The entry of a disqualified horse shall be void. LAC 11-6:25.18. The stewards may scratch an ineligible horse or reassign any prize the horse may have won, at any time. See: LAC 11-6:28. If a horse is ineligible, resulting in a race being erroneously awarded, the owner of the horse who has been wronged is entitled to the prize or money of which he was deprived. See: LAC 11-6:28.7.
Since this horse was ineligible to race, its entry was void and its owner should not have been awarded the purse monies. Accordingly, the trial court judgment which restored the purse monies of The Polly Classic to Dr. Brody was in error. In view of this holding, we pretermit any review of the trial judge’s ruling regarding the Commission’s alleged failure to prove that La-six “would” or “could” affect the speed of the horse, as this is unnecessary for the disposition of this case.
For the reasons assigned the judgment of the district court, which restored purse monies from The Polly Classic to Dr. Mi *898 chael Brody is hereby reversed. Additionally, the judgment is amended to sustain the Commission’s ruling that Dr. Michael Brody be suspended from racing and from all race track privileges for a period of thirty days.
REVERSED AND AMENDED.
GARRISON, J., dissents.
REDMANN, J., concurs in part and dissents in part.

. The trainer, who was suspended for thirty days, did not appeal the Stewards’ ruling.