LOBRANO, Judge.
Appellants appeal from the district court judgment affirming a decision of the Louisiana State Racing Commission (the Commission) disqualifying the winning horse and redistributing the purse monies for the fifth race held at Louisiana Downs on June 8, 1985. The judgment also affirmed the Commission’s decision to reinstate the horse’s trainer, Billy Gene Hudson.
On June 25,1985, the Stewards of Louisiana Downs (the Stewards) issued ruling No. 349, concerning the racehorse, “Sar-geant Wilson” which horse is owned by Royal V. Stewart (Stewart) and trained by Billy Gene Hudson (Hudson).
After receiving laboratory test results which indicated the presence of methamphetamine in the horse’s urine, the Stewards concluded that Rules of Racing, LAC 11-6:53.19 and 11-6:54 had been violated. Accordingly, the stewards suspended Hudson, disqualified “Sargeant Wilson” as the winner of the fifth race held at Louisiana Downs on June 8, 1985 and redistributed the purse. Hudson requested a split sample of the horse’s urine be forwarded to an independent testing laboratory at the University of Kentucky pursuant to LAC 11-6:53.37. Hudson applied for and was granted a suspensive appeal to the Louisiana State Racing Commission.
On July 3, 1985, Dr. J.W. Blake of the University of Kentucky, reported that the split sample of urine showed no presence of methamphetamine. However, an isomer of methamphetamine, Phentermine, was detected and confirmed.
After receiving Dr. Blake’s report, Hudson submitted a sample of a mixture containing D.M.S.O., crushed mothballs and camphor which he had topically applied to “Sargeant Wilson’s” foot prior to the race. On July 11, 1985, Dr. Blake reported this mixture contained Phentermine and that it was likely this preparation was the source of the drug found in the horse’s blood.
On August 1, 1985, after hearing this evidence, including Dr. Blake’s report, the Commission reversed Steward’s Ruling No. 349 insofar as the Stewards concluded the sample taken from “Sargeant Wilson” was methamphetamine which could have produced analgesia in, stimulated, or depressed a horse, or could have masked or screened a drug, not permitted by LAC 11-6:54, and reversed the Stewards ruling ordering that Hudson be suspended. The Commission did not reverse the Stewards ruling with respect to the disqualification of “Sargeant Wilson” and the redistribution of the purse monies.
Hudson filed a petition for review with the district court. Steward intervened in the proceedings.
On February 6, 1986, the district court reversed the Commission ruling as to the redistribution of the purse and remanded the case to the Commission. The Court stated:
“The redistribution of the purse in question is necessarily contingent upon a finding that the drug phentermine present in Sargeant Wilson’s urine could have ‘produced analgesia in, stimulated, or depressed the horse, or could have masked or screened a drug, not permitted by LAC 11-6:54.’ LAC 11-53:19. Such a finding was made respecting methamphetamine which was erroneously believed to be present. No such find *137 ing was made respecting phentermine which was in fact present.”
* * * * * *
“As no definitive assessment of the effect of phentermine appears in the record, this Court here [sic] reverses the judgment of the Louisiana State Racing Commission only as to its holding on the redistribution of the purse. The case is remanded to the Commission for a phar-macodynamical assessment of the effects of phentermine and for further proceedings not inconsistent with this order.”
On June 3, 1986, the district court reversed its February 6, 1986 decision and affirmed The Commission’s August 1, 1985 ruling to redistribute the purse monies. The Court in its judgment stated:
“In compliance with the order issued by this Court, the Commission procured testimony regarding the effect of Phenter-mine from both a representative of the State testing laboratory as well as a veterinarian employed by the Racing Commission. The evidence accumulated by the Commission demonstrates that the pharmacography of Phentermine could have ‘produced analgesia in, stimulated, or depressed the horse, or could have masked or screened a drug, not permitted by LAC 11-6:54.’ LAC 11-6:53.19. Since the evidence obtained on remand demonstrates that the drug Phentermine is not a ‘Permitted Medication’ within LAC 11-6:54, this Court affirms the Commission’s prior decision consistent with LAC 11-6:53.19.”
Hudson and Stewart assert that the court erred in affirming the Commission’s decision because, (1) the Commission never determined that Phentermine is a prohibited drug and; (2) in order for the purse to be redistributed the trainer must be found to have violated LAC 11-6:54 and must have been suspended or ruled off the track. We disagree.
In response to the district court’s order that no “definitive assessment of the effect of phentermine was present in the record,” the Commission submitted the transcript of testimony taken at a meeting held March 30, 1986 relative to the instant case. That meeting was opened by the following statement by the Commission’s attorney:
“By Mr. Jackson:
This matter concerns itself with the ruling of the Stewards No. 349 at Louisiana Downs dated June 26, 1985. This matter was remanded to the Commission by the Civil District Court for the Parish of Orleans for the assessment of the effect of Phentermine. ...”
Ms. Pat Pizzo, representative of the State testing laboratory and Dr. James Broussard, Veterinarian for the Commission at Delta Downs then testified as follows:
“By Ms. Pizzo:
... Q. Tell the Commission about Phen-termine.
A. Phentermine is a Schedule IV drug according to the Federal Government. This drug is commonly used for the control of obesity. It’s a central nervous system stimulant and it would have effects similar to those of other drugs in that family.[1] By Dr. Broussard:
Q. Are you familiar with the drug Phentermine?
A. Yes.
Q. If this drug was found in the system of a horse that had just finished racing would the presence of this drug produce analgesic in, depress the horse or mask or screen a drug not permitted?
A. In my opinion it would stimulate the horse.
Q. It could have an effect on the running of the race?
A. Yes.”
Mr. Jackson then concluded as follows:
“Any questions? All right, in connection with this matter with the testimony of Dr. Broussard and Ms. Pizzo, it would be *138 proper for the Commission to reaffirm its position pursuant to the order.”
The Commission then adopted a motion reaffirming their August 1, 1985 decision.
La.R.S. 49:958 governing the form of a decision of the Commission does not require that it be in writing, but affords the option to the Commission to state its decision in the record. Considering the issue before the Commission, as stated by its attorney, the nature of the testimony, and the Commission’s reaffirmance of its previous order after hearing the evidence, we conclude that the Commission complied with the requisites of La.R.S. 49:958. Although Hudson and Stewart argue that there was no determination that Phenter-mine is a prohibited drug, that argument is meritless as the evidence clearly substantiates the finding that the drug is prohibited by LAC 11-6:53.19.
The Commission found that Hudson did not intentionally drug the horse with Phentermine but since the horse was in fact drugged, disqualification was appropriate.
The suspension or ruling off of a trainer is within the discretion of the Commission and is not a mandated first step in disqualifying a horse for a violation of LAC 11-6:54. LAC 11-6:53.19 reads in pertinent part:
“Should the chemical analysis of any sample of the blood, saliva, urine, or other excretions of body fluids of any horse so analyzed contain any narcotic, stimulant, depressant, local anesthetic, analgesic, or drugs of any description, not permitted by LAC 11-6:54, the trainer of the horse may after a hearing of the stewards, be suspended or ruled off, if the stewards conclude that the drug contained in the sample could have produced analgesia in, stimulated, or depressed the horse, or could have masked or screened a drug, not permitted by LAC 11-6:54, that could have produced analgesia in, stimulated or depressed the horse. The stable foreman, groom, and any other person shown to have had the care or attendance of the horse may be suspended, or ruled off. The owner or owners of a horse so found to have received such administration shall be denied, or shall promptly return, any portion of the purse or sweepstakes and any trophy in such race, and the same shall be distributed as in the case of a disqualification.” (emphasis added).
Clearly, LAC 11-6:53.19 allows the Commission to disqualify an ineligible horse while permitting a trainer to continue to pursue his livelihood when the evidence indicates no deliberate attempt on the part of the trainer to violate the rules of racing. Such was the finding of the Commission. Horse racing is a sport which is the subject to extensive and detailed legislation, and the conduct of that sport has been entrusted to the Commission. Romero v. Stephens, 359 So.2d 1061 (La.App. 3rd Cir.1978), writs den. 360 So.2d 1177. The general rule is that the reasonable discretion of administrative boards, such as the Commission, will not be disturbed absent proof of an abuse of that discretion.
The Courts should not interfere with the bona fide judgment of such a board when based on substantial evidence. Owens v. Louisiana State Racing Commission, 466 So.2d 764 (La.App. 4th Cir.1985) citing, Cannatella v. Civil Service Commission, 381 So.2d 1278 (La.App. 4th Cir.1980), writs den. 384 So.2d 793.
It matters not how a horse became ineligible. An ineligible horse cannot share the purse. LAC 11-6:25.17; Stall v. Louisiana State Racing Commission, 442 So.2d 789 (La.App. 4th Cir.1983) writ den. 445 So.2d 449.
For the foregoing reasons the judgment of the trial court is affirmed.
AFFIRMED.

. La.R.S. 40:964(C) classifies phentermine as a schedule II stimulant along with methamphetamine.