ARMSTRONG, Judge.
Defendant, the Louisiana State Racing Commission (the “Commission”), appeals from a trial court judgment overruling the penalty imposed upon plaintiff, Jerry D. Cart, by the Commission. We now affirm.
Jerry Cart was the owner/trainer of the horse Big Earl, which he ran in the September 24, 1989 Super Derby at Louisiana Downs. Big Earl finished second, winning a purse of $200,000.00. After the race, a blood sample was drawn from Big Earl by a representative of the Commission for testing. Test results showed that Big Earl had the drug phenylbutazone in his blood in a concentration of 9.8 micrograms per milliliter, which was in excess of the post-race maximum of 5.0 micrograms per milliliter allowed by Revised Louisiana Administrative Code (LAC) 35:1505. An independent test showed a concentration of 6.8 micrograms per milliliter, still in excess of the maximum.
After an October 12, 1989 hearing, a panel of racing stewards fined plaintiff $200.00 and ordered the $200,000.00 purse money relinquished and redistributed. Plaintiff immediately appealed to the Commission which upheld the stewards’ ruling by a vote of 4-3. Plaintiff subsequently filed an appeal in Civil District Court for the Parish of Orleans. Upon consideration of the briefs filed by the parties and oral argument, the trial court reversed the decision of the Commission, finding that although the blood level of phenylbutazone exceeded the maximum amount allowed by LAC 35:1505, the penalty provided by that statutory scheme was a fine and/or suspension and/or revocation of plaintiffs license, not forfeiture of the purse. The Commission subsequently perfected this appeal.
Under La.R.S. 49:964, a district court may reverse or modify a decision of an administrative agency if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
(1) In violation of constitutional or statutory provisions;
(2) In excess of the statutory authority of the agency;
(3) Made upon unlawful procedure;
(4) Affected by other error of law;
(5) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or
(6) Manifestly erroneous in view of the reliable, probative, and substantial evidence on the whole record. In the application of the rule, where the agency has the opportunity to judge of the credibility of witnesses by firsthand, observation of demeanor on the witness stand and the reviewing court does not, due regard shall be given to the agency’s determination of credibility issues.
Chapter 15 of the LAC is entitled “Permitted Medications.” The Chapter consists of seven provisions. The first provision, LAC 35:1501, states in part that:
[T]he administration, use, application and/or possession of any narcotic, stimulant, depressant or local anesthetic are prohibited....
Aside from prohibiting the above drugs, the Chapter provides for two types of permitted medication. LAC 35:1509 defines permitted medication as “the use of Phe-nylbutazone and bleeder medication as provided in this [Chapter].” (emphasis added) LAC 35:1505 provides that (1) phenyl-butazone may be used in training but may not be administered within 24 hours of a race in which a horse is entered; and (2) the maximum post-race blood content level of phenylbutazone, regardless of the time of administration, is 5.0 micrograms per *411 milliliter. Phenylbutazone is a non-steroidal anti-inflammatory medication. LAC 35:1507 provides for the use of bleeder medications. These two types, phenylbuta-zone and bleeder medication, are the only medications mentioned as permitted in LAC 35:1501 et seq.
LAC 35:1511 is entitled “Violations,” and provides:
After notice and hearing, any person found to have violated the provisions of the permitted medication rule may be punishable by fine, and/or suspension, and/or revocation of his/her license, (emphasis added)[1]
Title 35, Chapter 17 of the LAC is entitled “Corrupt and Prohibited Practices.” LAC 35:1725 provides:
Controlled medication is permitted in Louisiana under the conditions set forth in LAC 35:1501 et seq.
LAC 35:1727 provides:
No person shall administer, or cause or knowingly permit to be administered, or connive at the administration of, any drug not permitted by LAC 35:1501 et seq.... (emphasis added)
LAC 35:1729 provides:
When a report is received from the state chemist ... indicating] the presence of a forbidden narcotic, stimulant, depressant, or analgesic, local anesthetic or drugs of any description, not permitted by LAC 35:1501 et seq., this shall be taken as prima facie evidence that such has been administered to the horse.... (emphasis added)
LAC 35:1737 provides that in cases where the chemical analysis of a horse’s blood contain “any narcotic, stimulant, depressant, local anesthetic, analgesic or drugs of any description, not permitted by LAC 35:1501 et seq.,” the owners shall return any portion of the purse won by the horse in the affected race which will be distributed as in the case of a disqualification. The provision also provides for the discretionary suspension of the trainer of an affected horse, as well as the stable foreman, groom, and any other person shown to have had the care of or attendance of such horse.
The Commission maintains that the above-mentioned statute, LAC 35:1737, gives the stewards and the Commission authority to order plaintiff to relinquish the $200,000.00 purse. The Commission interprets the phrase “not permitted by LAC 35:1501 et seq.” to include phenylbutazone when found in the blood in a concentration greater than that allowed by LAC 35:1505, that is, greater than 5.0 micrograms per milliliter.
The Commission points out that under LAC 35:1787, had Big Earl’s blood been analyzed before the race, the horse could have been scratched from the race had the laboratory test reports indicated:
[T]he presence of a prohibited medication or drug ... particularly, but not limited to specific maximum by quantitative determination of 5.0 micrograms Phenylbu-tazone per milliliter of blood.... LAC 35:1787(G).
We disagree with the Commission. Under LAC 35:1501 et seq., phenylbutazone is a permitted medication when administered in accordance with LAC 35:1505, i.e., in amounts such that blood test result levels do not exceed 5.0 micrograms per milliliter. That is the permitted medication rule as it pertains to phenylbutazone. A violation of the permitted medication rule occurs when phenylbutazone is either administered within 24 hours of a race in which the horse is entered, or when post-race blood test results show a concentration of phenyl-butazone in the blood greater than 5.0 micrograms per milliliter. Under LAC 35:1511, a horse’s having more than 5.0 micrograms of phenolbutazone per milliliter of blood is a violation of “the provisions of the permitted medication rule.” That provision sets the range of possible penalties for such a violation, and the penalty does not provide for the relinquishing of the purse.
*412 When construing a statute a court should presume that it was passed with deliberation and with full knowledge of other laws on the same subject. City of New Orleans v. Bd. of Supervisors of Elections for Parish of Orleans, 216 La. 116, 43 So.2d 237 (1949); Jungina v. Stafford, 535 So.2d 794 (La.App. 2d Cir.1988).
LAC 35:1737, the penalty provision relied upon by the stewards and the Commission as providing that Big Earl’s purse be relinquished and redistributed, was promulgated by the Commission in 1971, repro-mulgated in 1976, amended in 1977, and repromulgated in 1978. LAC 35:1511, the penalty provision plaintiff maintains is applicable to his violation of the permitted medication rule, was promulgated in 1980, and amended in 1983. It has been in its present form for almost eight years.
In construing and reconciling these two provisions we first presume that the Commission was aware of LAC 35:1737 when it promulgated LAC 35:1511. It is unreasonable to assume that the Commission promulgated two different penalty provisions for violations of the same conduct. The interpretation advanced by the Commission is dependent upon this unreasonable assumption. Moreover, if there is a conflict between the two provisions, the later expression of the will of the Commission should govern.
The reconciling of these conflicting penalty provisions requires the view that LAC 35:1511 provides penalties for the use of permitted medications other than in accordance with LAC 35:1505, while LAC 35:1737 provides penalties relative to drugs such as narcotics, LAC 35:1713, stimulants, LAC 35:1715, drugs affecting performance, LAC 35:1717 and 35:1727, or a “masking” drug, LAC 35:1719, which show up in post-race tests. These drugs are in a class separate and apart from phenylbutazone and bleeder medications. Therefore, it is entirely reasonable to have different penalties for violations involving the two different classes of substances.
LAC 35:1787, cited by the Commission, applies only to pre-race laboratory test reports. The drafters of this provision apparently felt that if a pre-race test revealed more than 5.0 micrograms of phenylbuta-zone per milliliter of blood, the horse should not be allowed to run in the scheduled race. This provision does appear to classify phenylbutazone in such concentration as a prohibited medication. This provision for pre-race testing specifically states that “all existing rules on post-race testing remain in full force and effect.” Thus, while the Commission may persuasively argue that this article may be looked to for guidance in determining whether phenylbu-tazone in excess of 5.0 micrograms per milliliter of blood is considered a prohibited medication for the post-race testing procedures, it is not conclusive as to that issue. Again, we go back to the irreconcilableness of having two penalty provisions for violations of the same conduct.
The Commission submits that an administrative agency has the authority to interpret its rules and such interpretations become a part of its rules, citing Hill v. Dept. of Health and Human Resources, 457 So.2d 781 (La.App. 1st Cir.1984). While this may be the general rule, it cannot apply to the circumstances of this case when the effect of accepting the Commission’s interpretation is to accept that there are two penalties for the same violations, application of which is at the whim of the Commission. We cannot accept such an interpretation.
The Commission also cites a prior case where the Commission’s taking of a purse was upheld by this court. In Brody v. Louisiana State Racing Commission, 470 So.2d 894 (La.App. 4th Cir.1985), we upheld the Commission’s taking of a purse won by a non-bleeder horse who was illegally administered bleeder medication, which at that time could only be administered to horses labeled as known bleeders. Thus, we classified the bleeder medication as a prohibited medication. We further found that because the horse had been administered a prohibited medication it was ineligible to run in the race, and thus the purse was taken from the horse. Similarly, a second case cited by the Commission, Hudson v. Louisiana State Racing Com *413 mission, 505 So.2d 135 (La.App. 4th Cir.1987), involved a prohibited drug.
Those facts are clearly inapposite to those in the case before us. Here, Big Earl was qualified to receive phenylbutazone. The presence of the drug in his blood in a greater than allowable concentration was a violation of the permitted medication rule, a violation for which the penalty specifically provided at that time by the applicable regulatory scheme, LAC 35:1501 et seq., was a fine and/or suspension and/or revocation of one’s license.
For the foregoing reasons, we affirm the judgment of the trial court, finding that the Commission committed an error of law in taking the purse won by plaintiffs horse, Big Earl.
AFFIRMED.

. In 1990, subsequent to the events in the instant case, LAC 35:1511 was amended to mandate the return and redistribution of the purse in a case such as this.