J^JOAN BERNARD ARMSTRONG, Judge.
This is an action for judicial review of a decision of the Louisiana State Racing Commission (“LSRC”). The trial court reversed the LSRC’s decision. For the reasons given below, we will reverse the decision of the trial court and reinstate the decision of the LSRC. In doing so, we note that, apparently, certain pertinent statutory authority was not brought to the attention of the trial court, but is discussed in the briefs on appeal.
Robert Lee Boxie was the holder of an “owner/pony” license issued by the LSRC. The LSRC suspended Mr. Boxie’s license because it found that Mr. Boxie had attempted to possess a “battery” while in a horse barn at a racetrack. A “battery” is an electrical device used to shock horses during a race to make them run faster.
The LSRC has promulgated its Rule 35:1.1705 which states that certain devices, such as the “battery” at issue here, may not be possessed by anyone at a racetrack. The LSRC also has promulgated its Rule 35:1.1706 which, inter alia, | ¿prohibits any attempted violation of Rule 35:1.1705 and prescribes penalties for violation or attempted violation of Rule 35:1.1705.
A statute enacted by the Legislature, La. R.S. 4:175(D), prohibits, inter alia, possession at any racetrack of certain devices, including the “battery” at issue here. Another subsection of that same Section 175, specifically, La. R.S.4:175(G), provides for fines and/or imprisonment of anyone who violates or attempts to violate Section 175.
In the proceedings in the trial court, Mr. Boxie argued that, by promulgating its Rule 35:1.1706, which, in effect, prohibits attempted possession of a “battery” at a racetrack, the LSRC exceeded its statutory authority. Mr. Boxie’s argument was based upon the fact that La.R.S. 4:175(D) prohibits possession of a “battery” at a racetrack but is silent as to attempted possession of a “battery” at a racetrack. The trial court compared Rule 35:I.1706’s prohibition on attempted possession of a battery at a racetrack, to the absence of such a provision in La. R.S. 4:175(D), and concluded that the LSRC had exceeded its statutory authority when it prohibited attempted possession of a “battery” at a racetrack. Of course, if a regulatory agency does exceed its statutory authority, that is a ground for the court to reverse the agency. La. R.S. 49:964(G).
However, in the present case, reference to La. R.S. 4:175(G), which penalizes attempted possession of a “battery” at a racetrack, makes it clear that the LSRC did not exceed its statutory authority by prohibiting attempted possession of a battery at a racetrack. Apparently, La. R.S. 4:175(G) was not called to the 13attention of the trial court. Thus, the trial court did not have the opportunity to consider La. R.S. 4:175(G) when deciding that question of whether the LSRC exceeded its statutory authority.[1]
*1185 Although the trial court addressed only the issue of the LSRC’s statutory authority, Mr. Boxie makes several other arguments on appeal as to the LSRC’s decision to suspend his license.
First, Mr. Boxie argues that the evidence before the LSRC was insufficient. A security guard at the racetrack, Phillip Doucet, testified that he observed Mr. Boxie on horseback in a barn at the racetrack.
Mr. Doucet testified:
I was making a round in Barn 5, and when I got to the north end, I noticed Mr. Boxie had his hand between the wall and door frame. He pulled his hand out to steady his horse. He put his hand back in. When I asked him if he lost something, he looked at me kind of suspicious, and he rode off. I followed him to see which way he went. He went straight to the paddock, so I radioed the nearest officer in the paddock to keep an eye on him. I got something to stand on top to find out what he was reaching for or trying to get something. I noticed there was a little object wrapped with black tape, and by that time, my supervisor had told me to back off and secure the area, which I did. By that time, Chad Bonneau and Scott Thompson and my supervisor Wilton Roberts showed up. Scott Thompson put his hand there and managed to get it out. That’s when we found outhe told me it was an electrical device. 14Scott Thompson testified that, when he reached behind the door frame, he could not immediately pull the “battery’’ out, and had problems pulling it out, because it was wedged and stuck.
It was certainly reasonable for the LSRC to conclude that Mr. Boxie was trying to retrieve the “battery” from behind the door frame. Apparently, the “battery” had been placed there earlier, in readiness for future use, by Mr. Boxie or an accomplice. Evidently, Mr. Boxie had some trouble getting the “battery” out from behind the door frame because it was wedged and stuck and, when questioned by Mr. Doucet, Mr. Boxie abandoned the attempt to retrieve the “battery” and rode away.
Mr. Boxie admits that he was in the barn at the time, but denies that he was trying to retrieve the battery and denies hearing Mr. Doucet speak to him. No other witness contradicts Mr. Doucet as to his observations of Mr. Boxie’s actions in the barn.
The LSRC, as the finder of fact, was entitled to credit Mr. Doucet’s testimony. There was some inconsistency between Mr. Doucet’s testimony and that of another witness as to when certain photographs of the scene were taken, but that is peripheral to Mr. Doucet’s testimony as to his observations of Mr. Boxie’s actions in the barn.
There is no doubt that the LSRC’s finding that Mr. Boxie was trying to retrieve the “battery” from behind the door frame was reasonable and based upon substantial evidence. Therefore the LSRC’s finding may not be set aside on judicial review. La. R.S. 49:964; Hudson v. LSRC, 505 So.2d 135 (La.App. 4th Cir.1987); Boxie v. LSRC, 618 So.2d 490 (La.App. 4th Cir. 1993).
| ¡^Second, Mr. Boxie argues that the LSRC erred in denying his request for a continuance of the LSRC hearing. Mr. Boxie’s request for a continuance was made, apparently for the first time, at the LSRC hearing.
*1186 Mr. Boxie complains that, when his counsel requested the continuance, the LSRC asked the prosecutor’s position and the prosecutor objected to a continuance. We see nothing unusual nor improper. In any case, when one party requests a continuance, the court or other tribunal will want to know the opposing counsel’s position. Mr. Boxie complains that the LSRC’s asking the prosecutor as to his position with respect to the continuance amounts to a mingling of the prosecutorial and judicial functions. That is not correct. The prosecutor in this action was a special counsel hired to represent the Racing Stewards to prosecute the case before the LSRC. The LSRC had its own attorney, provided by the Attorney General’s office, to advise it with respect to this case. The prosecutor played no greater role in the LSRC’s decision as to the continuance than did Mr. Boxie’s attorney when he requested the continuance.
Mr. Boxie also testified that there were three people who could have testified that he, Mr. Boxie, had legitimate reason to be in the barn where the “battery” was found. Mr. Boxie testified that he had given the names of those three people to his lawyer (not his counsel on appeal) “if he wanted to subpoena them. He said it was too late.” Mr. Boxie’s brief does not state that he ever requested issuance of or service of subpoenas on the three individuals. If the subpoenas had been requested but not issued and served in time for the LSRC hearing, then Mr. Boxie would have a stronger argument that he should have been granted a continuance, but it appears that that is not the case.
lain any event, assuming that the three individuals had appeared at the LSRC hearing, and had testified that Mr. Boxie had a legitimate reason to be in he barn in which the “battery” was found, that is really tangential. The real issue is why did Mr. Boxie twice put his hand in the space between the door frame and the wall — the exact spot where the “battery” was found. Mr. Boxie does not contend that any of the three witnesses at issue would offer any innocent explanation for why Mr. Boxie was reaching into the very space where the “battery” was located. Thus, even if the three witnesses had appeared and testified, their evidence would have been of little significance.
Third, Mr. Boxie argues that the sanction imposed by the LSRC, a ten-year suspension of his license and a $5,000 fine, is too harsh and should be reduced by this court to a six month suspension. The LSRC may refuse, suspend or withdraw a license of a person who violates or attempts to violate the racing laws. La. R.S. 4:152. The LSRC’s Rule 35:1.1706 provides that a person who attempts to possess a “battery” at a racetrack shall have his license suspended for not less than five years and may be fined $3,000 to $10,000. Thus, there was clear notice by the LSRC that attempted possession of a “battery” at a racetrack is a very serious offense which will be punished severely.
The LSRC’s sanction can be set aside only if it is an abuse of discretion. La. R.S. 49:964. Apparently important to the LSRC’s decision was the fact that Mr. Boxie had been suspended once before, for a period of one year, for possession of a “battery” at a racetrack. (Why he was suspended for only one year, when Rule 35:1.1706 makes a five-year suspension the minimum penalty, is not explained. Perhaps the rule was amended after Mr. Box-ie’s first offense and prior to his 17present offense.) The fact that Mr. Boxie is a repeat offender is a legitimate consideration for the LSRC in deciding upon the penalty to be imposed.
The sanction imposed in this case is a severe one, but the offense is a serious one *1187 by a repeat offender, and we cannot say that the LSRC abused its discretion.
For the foregoing reasons, the judgment of the trial court is reversed and the decision of the LSRC is reinstated.

REVERSED.

. We express no opinion as to whether La. R.S. 4:175(D), La.R.S. 4:175(G) or La.R.S. 4:175 altogether, is necessary for the LSRC to have authority to prohibit attempted possession of a ''battery” at a racetrack. See generally La.R.S. 4:141 (LSRC to prevent corrupt, dishonest and unprincipled racing practices); La.R.S. 4:148 (LSRC to make rules and regu *1185 lations for racetracks). Because of the existence of La.R.S. 4:175(G), it is unnecessary for us to consider the broader statutory provisions as to the duties and powers of the LSRC.